IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARCUS LE'SHAWN DIXON,

>   Petitioner,

v.                                                                                                                  Civil Action No. 3:12CV429

HAROLD W. CLARK,

>   Respondent.

## MEMORANDUM OPINION

Marcus Le'Shawn Dixon, a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition"). Dixon challenges his convictions in the Circuit Court of the County of Northampton ("Circuit Court") for first degree murder, breaking and entering, robbery, and three counts of use of a firearm in the commission of a felony. In his § 2254 Petition, Dixon demands relief upon the following grounds:

> Claim 1      The prosecutor engaged in misconduct.
> (a)      "[T]he prosecutor made improper comments during closing arguments." (Mem. Supp. § 2254 Pet. 3.)
> (b)      "[T]he prosecutor presented repetitious cross-examination of prejudicial collateral matters of the sells [sic] of crack cocaine." (*Id.* at 6 (citation omitted).)
> (c)      "[T]he prosecutor excercised [sic] bias by striking . . . African-American jurors, preventing them [from] serv[ing] in petitioner's trial, who is also African-American." (*Id.* at 8.)
>
> Claim 2      Dixon failed to receive the effective assistance of counsel before and during his trial.
> (a)      "Dixon's counsel prejudiced him with the direct examination of prejudicial collateral matters of crack cocain[e]."[1] (*Id.* at 12 (citation omitted).)
> (b)      "Petitioner's counsel prejudiced him when counsel failed to object when the prosecutor cross-examined petitioner about the same prejudicial collateral matters of crack cocaine." (*Id.* at 14.)

---

[1] The Court omits Dixon's internal claim numbering from the quotations in Claim 2.

    (c) "Dixon's counsel's performance prejudiced him when he failed to object to the prosecutor's improper statements during the closing arguments." (*Id.* at 15 (citations omitted).)

    (d) "Dixon's counsel was ineffective when he failed to object to the meritless nolle prosequi of indictments in the Gen. Dist. Court which deprived him of [the] right to a preliminary hearing." (*Id.* at 18.)

    (e) "Petitioner's counsel was ineffect[ive] and prejudiced petitioner when he failed to object to the prosecutor's . . . peremptory challenges to remove African-American jurors." (*Id.* at 21.)

Claim 3    Insufficient evidence supported Dixon's participation in the crimes. (*See id.* at 25.)

Claim 4    "The trial court denied petitioner Dixon Due Process of Law[2] by allowing prior consistent statements on topics that the witnesses were not impeached by prior inconsistent statements . . . ." (*Id.* at 30.)

Additionally, Dixon moved to amend his § 2254 Petition to include the following claim:

Claim 5    Dixon received the ineffective assistance of counsel at sentencing.
    (a) Counsel failed "to present any mitigating evidence." (Mot. Amend[3] (ECF No. 14) 3 (citation omitted).)
    (b) Counsel allowed "petitioner to waive Presentence Investigation Report." (*Id.* at 6.)

Respondent has moved to dismiss on the grounds that Dixon's claims lack merit and/or are procedurally defaulted. Dixon has responded. For the reasons that follow, the Court will GRANT the Motion to Amend (ECF No. 14), DISMISS Claims 1(a)–(c) and 4 as procedurally defaulted, and DISMISS the remaining claims as lacking in merit.

---

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

[3] The Court employs the pagination assigned to this document by the Court's CM/ECF docketing system.

## I. PROCEDURAL HISTORY

Following his conviction in the Circuit Court, Dixon appealed to the Court of Appeals of Virginia. On May 13, 2009, the Court of Appeals of Virginia denied Dixon's appeal. *Dixon v. Commonwealth*, No. 1811-08-1, at 1 (Va. Ct. App. May 13, 2009).

Thereafter, Dixon petitioned the Supreme Court of Court of Virginia for an appeal. Dixon raised the following claims of error before the Supreme Court of Virginia:

> The jury and Court erred in finding Appellant guilty because of the failure of the Commonwealth to prove that Appellant was involved in the crimes.
> The Court erred in allowing prior consistent statements on topics that the witnesses were not impeached by prior inconsistent statements or in any other manner that would allow the admission of such prior consistent statements.

Petition for Appeal at 1, *Dixon v. Commonwealth*, No. 091880 (Va. filed Sept. 15, 2009) (internal citation omitted). On February 3, 2010, the Supreme Court of Virginia refused Dixon's petition for appeal. *Dixon v. Commonwealth*, No. 091880, at 1 (Va. Feb. 3, 2010).

Dixon then filed a state petition for a writ of habeas corpus. In that petition, Dixon raised the following claims:

> A. He received ineffective assistance of trial counsel in that counsel:
> 1) Questioned him about prejudicial collateral matters;
> 2) Failed to object when the prosecutor elicited testimony on a prejudicial collateral matter;
> 3) Assisted in prosecutorial misconduct;
> 4) Dixon was deprived of his right to a fair trial because of prosecutorial misconduct.
> B. He received ineffective assistance of trial counsel in that counsel failed to:
> 1) Object to the violation of his right to a preliminary hearing; and
> 2) Move to have the indictments dismissed or the case remanded to the General District Court for a preliminary hearing.

*Dixon v. Clarke*, No. CL0000328-00, at 2 (Va. Cir. Ct. June 8, 2011). The Circuit Court concluded Dixon's claims lacked merit and denied the petition. *Id.* at 5–12.

3

Dixon then pursued an appeal to the Supreme Court of Virginia. The Supreme Court of Virginia refused Dixon's petition for appeal because it failed "to contain an argument section as required by Rule 5:17(c)(6).[4]" *Dixon v. Clarke*, No. 111299, at 1 (Va. Nov. 18, 2011).

## II. EXHAUSTION AND PROCEDURAL DEFAULT

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

---

[4] Rule 5:17(c)(6) provides:

*Authorities and Argument.* With respect to each assignment of error, the standard of review and the argument--including principles of law and the authorities--shall be stated in one place and not scattered through the petition. At the option of counsel, the argument may be preceded by a short summary.

Va. Sup. Ct. R. 5:17(c)(6).

4

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "to the state court[s] 'both the operative facts and the controlling legal principles' associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Dixon failed to properly present the federal constitutional claims in Claims 1(a)–(c)[6] and 4 to the Supreme Court of Virginia. If Dixon now attempted to raise such claims with the Supreme Court of Virginia, that court would find the claims barred under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because they could have been, but were not, raised on direct appeal. *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Dixon procedurally defaulted Claims 1(a)–(c) and 4. For the reasons set forth *infra* Part V. A & B, the Court rejects Dixon's assertion that the ineffective assistance of counsel constitutes cause excusing his default. Accordingly, Claims 1(a)–(c) and 4 will be DISMISSED.[7]

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

[6] Respondent incorrectly states that, on state habeas, the Circuit Court dismissed Claim 1(a)–(c). (Mem. Supp. Mot. Dismiss 4.)

[7] Respondent argues that Dixon also procedurally defaulted his ineffective assistance of counsel claims. (Mem. Supp. Mot. Dismiss 4–6.) In light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), Dixon's lack of counsel in his state habeas proceedings may establish cause for the procedural default of his claim. *Martinez*, 132 S. Ct. at 1320. Given the evident lack of merit of the underlying claims and lack of any citation by Respondent to a decision after *Martinez* where a court has enforced a default under similar circumstances, judicial economy dictates that the court address the merits of Dixon's allegedly

## III. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[8]

---

defaulted claims. *See Daniels v. Hinkle*, No. 3:11CV675, 2012 WL 2792199, at *1 (E.D. Va. July 9, 2012) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)).

[8] In light of the foregoing statutory structure, the Virginia courts' factual findings and disposition of Dixon's claims figure prominently in this Court's opinion.

## IV. SUFFICIENCY OF THE EVIDENCE

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Instead of attacking the Commonwealth's proof of the elements of each offense of conviction, Dixon contests whether sufficient evidence existed to demonstrate he was the perpetrator of the charged crimes.

The Court of Appeals of Virginia aptly summarized the evidence of Dixon's guilt as follows:

> On November 21, 2006, Lawrence Massie was found shot to death in his Northampton County home. Massie had sustained six gunshot wounds, four of them fatal. There were also signs Massie had been beaten. The door to the home had been opened by force.
> Jameson Johnson testified that he went to Massie's home on the night of November 20, 2006 with appellant and Rahjune Smith. Smith had told appellant and Johnson that Massie had a large sum of money. Smith kicked in the door. Appellant pointed a gun at Massie, who was in bed. Johnson held Massie down while Smith went through Massie's belongings looking for money. When Massie tried to get out of bed and obtain a gun, appellant shot him several times. The group fled the scene, taking Massie's wallets with them. As a result of the incident, Johnson pleaded guilty to charges of murder, robbery, and breaking and entering. Johnson testified he was hoping to receive favorable treatment at his sentencing for the offenses.
> Smith testified he was with appellant and Johnson on the night Massie was killed. Smith acknowledged that he kicked in Massie's door. Smith found Massie's pants and two wallets. Johnson held down Massie and beat him. Appellant shot Massie several times. After the shots were fired, the group fled from the home. Smith, who pleaded guilty to murder, robbery, and burglary, was awaiting sentencing at the time of appellant's trial. Pursuant to his plea agreement with the Commonwealth, Smith would not be sentenced to more than twenty-five years for the offenses.

>The police confronted appellant about the offenses on September 5, 2007. Immediately after telling the police he had traveled to Norfolk from the Eastern Shore on November 20, 2006, appellant telephoned his girlfriend, Daeteria Holmes, and told her she needed to remember what happened on that date because the police would be questioning her.

*Dixon v. Commonwealth*, No. 1811-08-1, at 1–2 (Va. Ct. App. May 13, 2009).[9] The foregoing evidence amply supports Dixon's guilt. "Both Johnson and Smith testified appellant was with them when they entered Massie's home. Johnson and Smith stated appellant had a gun, which he used to shoot Massie. The testimony of Johnson and Smith was corroborated by other evidence." *Id.* at 3. Accordingly, Claim 3 will be DISMISSED.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The second component of *Strickland*, the prejudice component,

---

[9] The Court of Appeals of Virginia summarized the defense evidence as follows:

>Ryetonio Walker and Kamal Cuffee, who were incarcerated with Smith, testified Smith had said appellant had nothing to do with Massie's death, but that Smith was blaming the killing on appellant because appellant had sold Smith fake drugs. Appellant also introduced alibi evidence that he left the Eastern Shore for Norfolk on the afternoon of November 20, 2006. Appellant denied that he broke into Massie's house, robbed him, and shot him. Appellant admitted having prior felony convictions.

*Dixon*, No. 1811-08-1, at 2.

9

requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Conduct Prior to the Presentation of Evidence

In Claim 2(d), Dixon faults counsel for failing to challenge an alleged violation of Dixon's right to a preliminary hearing. In rejecting this claim, the Circuit Court stated the following:

> The gravamen of the complaint is that counsel failed to object to what Dixon asserts was an improper order of nolle prosequi of the original warrants. Continuing, Dixon alleges that his subsequent direct indictments for the same offenses unlawfully violated his statutory right to a preliminary hearing, a violation to which counsel should have objected. The Court holds this claim is without merit.
> "[A] valid order of *nolle prosequi* terminates a prosecution and consequently **cuts off** a defendant's statutory right to a preliminary hearing when that defendant is later charged by a direct indictment." *Wright v. Commonwealth*, 52 Va. App. 690, 702, 667 S.E.2d 787, 793 (2008) (*en banc*) (emphasis added). This is true because "the purpose of the preliminary hearing, to ensure that an accused is not held in the absence of 'reasonable ground to believe that he committed the offense,' Code § 19.2–218, becomes moot when the accused has been discharged from further prosecution." *Id.* at 703, 667 S.E.2d at 793. Moreover, Dixon does not have standing to collaterally attack the district court's order of *nolle prosequi*. *See id.* at 703–07, 667 S.E.2d at 793–95. Finally, there is no right to a preliminary hearing following direct indictment. *Wright* is dispositive of this claim. The Court finds there was no violation of Dixon's statutory right to a preliminary hearing and counsel was not deficient for failing to object on this ground. *Correll* [*v. Commonwealth*], 232 Va. [454,] 470, 352 S.E.2d [352,] 361 [(1987)](no duty to object to admissible evidence); *Jackson* [*v. Warden of Sussex I State Prison*)], 271 Va. [434,] 451, 627 S.E.2d [776,] 791 (counsel not ineffective for withdrawing frivolous argument) [(2006)]; [citation omitted]. The Court further finds there is no reasonable probability of a different

result had counsel interposed the frivolous objection. *Wright*, 52 Va. App. at 703, 667 S.E.2d at 793.

*Dixon v. Clarke*, No. CL0000328–00, at 9–10 (Va. Cir. Ct. June 8, 2011) (first alteration in original). The Circuit Court further noted that Dixon had no right "'to have the circuit court review the district court's discretionary decision [to order a nolle proseuqi] [sic] and grant [his] requested remedy of either having the case remanded to district court for preliminary hearing or having the subsequent indictments dismissed.'" *Id.* at 10–11 (first alteration in original) (quoting *Wright*, 667 S.E.2d at 795).

Given that the resolution of Dixon's claim of ineffective assistance of counsel is highly dependent upon Virginia law, Dixon fails to demonstrate prejudice or deficiency. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law.") Accordingly, Claim 2(d) will be DISMISSED.

In Claim 2(e), Dixon faults counsel for failing to challenge the prosecution's use of its peremptory strikes to remove African-American venirepersons from the jury.[10] Dixon, however, fails to support this claim with any specific facts. Dixon fails to identify which, if any, of the venirepersons struck by the prosecution were African-American. Neither the transcript nor the Circuit Court record reveal the race of the venirepersons removed by the prosecutor with his peremptory strikes or the ultimate racial composition of Dixon's jury.

---

[10] Dixon did not pursue this claim in the Virginia courts.

11

"A prosecutor's use of peremptory challenges to exclude jurors solely on racial grounds violates equal protection rights of the jurors and the defendant." *United States v. Slade*, Nos. 92-5154, 93-6309, 1993 WL 513835, at *3 (4th Cir. Dec. 9, 1993) (citing *Batson v. Kentucky*, 476 U.S. 79 (1986)). "It is simply not enough, however, for a petitioner to allege that there *might* have been discrimination in some aspect of his trial." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). Conclusory, general allegations of the ilk advanced here by Dixon fail to support a *Batson* claim, much less demonstrate that counsel performed deficiently by failing to raise a *Batson* challenge. *See id.* at 1135–36 (dismissing ineffective assistance of counsel claim where there was "no *evidence* in the record that any-much less 'the bulk'-of the veniremen struck by the prosecution were black" or "any evidence that the prosecutor asked questions or made comments during *voir dire* that might suggest racial bias"); *Slade*, 1993 WL 513835, at *3 ("A bare allegation that the prosecutor struck black veniremen, by itself, is insufficient." (citation omitted)). Given the foregoing circumstances,[11] Dixon fails to overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Accordingly, Claim 2(e) will be DISMISSED.

---

[11] Immediately preceding the exercise of peremptory strikes, the Circuit Court informed the venirepersons that the prosecution and the defense "cannot strike just for the purpose of removing all people of one race from the panel." (July 21, 2008 Tr. 75.) Immediately thereafter, defense counsel informed the Circuit Court that they were satisfied with how the prosecution had exercised its peremptory strikes. (*Id.*)

12

### B. Conduct at Trial

In Claims 2(a) and 2(b), Dixon faults counsel for permitting questions about Dixon's alleged distribution of crack cocaine. Dixon agreed with counsel to bring up the matter of his drug distribution as part of his defense. Specifically, with respect to Dixon's counsel's questions to Dixon about his drug trafficking (Claim 2(a)), the Circuit Court found:

> Dixon expressly averred to the Court before testifying in the jury's presence that he had decided for himself to testify. Dixon also confirmed that he had agreed to the defense strategy of allowing the jury to know the precise nature of his prior felony convictions; specifically that he had previously been convicted of possession of crack cocaine. "Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989); *United States v. Williams*, 631 F.2d 198, 204 (3d Cir. 1980) (no ineffective assistance of counsel where defendant ultimately concurred in his trial counsel's tactical decision). "To allow that would be to exempt defendants from the consequences of their actions at trial and would debase the right to effective assistance of counsel enshrined in the sixth amendment." *Weaver*, 882 F.2d at 1140.
> The Court further finds Dixon's defense at trial was that he was in Norfolk with his girlfriend, Dateria Holmes, when the murder occurred. To buttress this claim, the defense also presented evidence that Rahjune Smith, one of Dixon's co-defendant's had a specific motive to falsely implicate Dixon; namely that on the afternoon of the murder, Dixon had sold Smith fake crack cocaine for $1200. The defense also presented testimony from two witnesses who claimed that Smith told them Dixon had no involvement in the murder; but because Dixon had cheated him by selling him fake crack, he was "going to do [Dixon] wrong." Thus, in the context of Dixon's case, the Court finds the evidence of drug activity was not a collateral matter but went to the heart of his defense. In light of the peculiar circumstances of this case, counsel's performance was not deficient. Instead the Court holds presenting this evidence was a tactical decision to further the defense claim that Smith fabricated Dixon's involvement in the murder. Moreover, Dixon has not demonstrated a reasonable probability of a different result had counsel not pursued this trial strategy.

*Dixon*, No. CL0000328–00, at 5–6 (alteration in original).

With respect to Claim 2(b), in which Dixon faults counsel for failing to object to the prosecution's questions to him about his sale of crack cocaine on the day of the murder and his general knowledge of the value of crack cocaine, the Circuit Court found:

> Dixon has failed to offer any valid basis on which counsel could have objected. Counsel is not ineffective for failing to make a futile objection. *See Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 361 (1987) (holding counsel had no duty to object to admissible evidence); *see also Jackson v. Warden*, 271 Va. 434, 451, 627 S.E.2d 776, 791 (2006) (counsel not ineffective for withdrawing frivolous argument); *Moody v. Polk*, 403 F.3d 141, 151 (4th Cir. 2005) (holding counsel not required to file frivolous motions). Because there was no valid basis on which counsel could have objected under the circumstances, his failure to do so did not constitute deficient performance. Moreover, the Court finds Dixon has not demonstrated that there is a reasonable probability of a different outcome had counsel interposed such a frivolous objection. Finally, as noted above, Dixon expressly advised the Court that he had agreed to the trial strategy counsel adopted. Having done so, Dixon will not be heard to complain about the result of pursuing that strategy. *Weaver*, 882 F.2d at 1140.

*Id.* at 7. For the reasons stated by the Circuit Court, Dixon fails to establish deficiency or prejudice on the part of counsel for Claims 2(a) and 2(b). Accordingly, Claims 2(a) and 2(b) will be DISMISSED.

In Claim 2(c), Dixon faults counsel for failing to object to allegedly improper comments by the prosecution during closing arguments. Dixon contends that "the prosecutor made derogatory statements in regard to petitioner's character, about defense witness[es'] character, about petitioner's defense, also comments vouching for state witness[es'] credibility and instructing the jury to convict Dixon." (Mem. Supp. § 2254 Pet. 16.)[12] For example, Dixon

---

[12] Dixon often fails to identify any particular comment as improper. Instead, he simply lists pages in the transcript and suggests that some improper remark can be found on that page. (*See, e.g.*, Mem. Supp. § 2254 Pet. 15–17 (citations omitted).)

contends[13] counsel should have challenged the prosecutor's comments that Dixon's "witnesses are clearly lying for various obvious reasons." (July 23, 2008 Tr. at 593 (spelling corrected).) The prosecutor's comments about the veracity of defense witnesses were not improper, but expressed reasonable inferences based on the evidence presented. *See United States v. Moore*, 710 F.2d 157, 159 (4th Cir. 1983) (concluding that "[i]t was of course permissible [and] good trial advocacy, for the government to stress to the jury the inconsistencies and improbabilities in [a witness's] testimony"). Additionally, Dixon fails to direct the Court to instances where the prosecutor impermissibly vouched for the credibility of his witnesses. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) ("Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." (citing *United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993))). For example, Dixon contends that the prosecutor vouched for the credibility of his witnesses on page 625 of the July 23, 2008 Trial Transcript. (Mem. Supp. § 2254 Pet. 17 citing, *inter alia*, (July 23, 2008 Trial Tr. 625).) Review of the record reflects that the prosecutor simply encouraged the jury to credit the prosecution witnesses because their testimony "has been corroborated in [the] most profound and fundamental ways." (July 23, 2008 Tr. at 625 (spelling corrected).)

Moreover, under the present circumstances, "'the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection.'" *Schmitt v. True*, 3:02CV953, 2005 WL 2245235, at *3 (E.D. Va. Sept. 15, 2005) (quoting *Bussard v. Lockhart*,

---

[13] (Mem. Supp. § 2254 Pet. 17 (citing, *inter alia*, July 23, 2008 Tr. at 593.)

32 F.3d 322, 324 (8th Cir. 1994)). Review of the pages cited by Dixon in the prosecution's closing argument fails to show an instance where "'counsel's only defensible choice'" was to object. *Id.* (quoting *Bussard*, 32 F.3d at 324.) Additionally, given the compelling evidence of his guilt, Dixon fails to demonstrate that had counsel objected, it is reasonably probable that he would have been acquitted. Accordingly, Claim 2(c) will be DISMISSED because Dixon fails to demonstrate deficiency or prejudice

### C. Conduct during Sentencing

In Claims 5(a) and 5(b), Dixon faults counsel for failing to present mitigating evidence and for waiving a presentence investigation report. Dixon, however, fails to make a specific proffer as to what mitigating evidence should have been presented or what mitigating circumstances the presentence investigation report would have revealed. *See Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (concluding that a convicted defendant cannot establish ineffective assistance "on the general claim that additional witnesses should have been called in mitigation" (citing *Briley v. Bass*, 750 F.2d 1238, 1248 (4th Cir. 1984))). Accordingly, Claims 5(a) and 5(b) will be DISMISSED.

## VI. DISCOVERY

Dixon has filed a Motion for Discovery and Inspection of Exculpatory Evidence (ECF No. 13) and a Motion for Discovery (ECF No. 20). A federal habeas petitioner must demonstrate good cause before he or she is allowed to conduct discovery. *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he [or she] is entitled to habeas corpus relief," once the facts are fully developed. *Id.* (citing *Bracy v. Gramley*, 520 U.S. 899,

908–09 (1997)). Dixon fails to make such a showing. Accordingly, Dixon's discovery motions (ECF Nos. 13, 20) will be DENIED.

## VII. CONCLUSION

Dixon's Motion to Amend (ECF No. 14) will be GRANTED. Dixon's discovery motions (ECF Nos. 13, 20) will be DENIED. The Motion to Dismiss (ECF No. 16) will be GRANTED. Dixon's claims will be DISMISSED. The § 2254 Petition will be DENIED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Dixon fails to satisfy this standard. A certificate of appealability will be DENIED.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
James R. Spencer
United States District Judge

Date: 9-11-13
Richmond, Virginia

17